UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GRANVILLE JACKSON, ROGELIO ENRIQUE
OATES, JR., PETER ADOLPHUS FACEY, LOUIS
EVANS, and GREGORY MCCLAIN on behalf of
themselves and all others similarly situated,

Case No. _____

   Plaintiffs,

COLLECTIVE ACTION
COMPLAINT

   vs.

HARRY SILVER HOUSING COMPANY, INC.,
MARION SCOTT REAL ESTATE, INC., PLIGHTED
CONSTRUCTION AND DEVELOPMENT SERVICES,
LLC, ALEX FREEDMAN, and VICTOR GARVIN,

   Defendants.
-------------------------------------------------------------------X

     Plaintiffs Granville Jackson, Gregory McClain, Rogelio Enrique Oates, Jr., Peter

Adolphus Facey, and Louis Evans (hereinafter referred to individually as "Plaintiffs"), through

their attorneys, the Marlborough Law Firm, P.C., respectfully allege as follows:

## PRELIMINARY STATEMENT

     1.    This is an individual and prospective collective action lawsuit brought under

the Fair Labor Standards Act ("FLSA") 29 USC 216(b) by Plaintiffs on behalf of themselves

and all similarly situated manual laborers for the failure of Defendants Marion Scott Real

Estate, Inc., Plighted Construction and Development Services, LLC ("Plighted"), Alex

Freedman, and Victor Garvin (collectively " the Employer Defendants") to pay Plaintiffs and

prospective members of the collective for unpaid minimum wage and overtime. Plaintiffs

also assert claims for retaliation against Defendants MSI and Freedman under the FLSA.

     2.    This action is further maintained pursuant to New York Labor Law ("NYLL")

and regulations promulgated thereunder, for the Employer Defendants and Defendant Harry

Silver Housing Company, Inc. ("HSHC," collectively with the Employer Defendants, "Defendants"), for the Employer Defendants' failure to pay minimum wage, failure to pay overtime premium pay, failure to pay all wages due, and failure to comply with the Wage Theft Prevention Act under the NYLL. Plaintiffs also assert claims for retaliation against Defendants MSI and Freedman under the NYLL.

3.      Moreover, Plaintiffs assert common law claims for conversion, quantum meruit, trespass to chattel, and unjust enrichment against Defendants MSI, Freedman, and HSHC.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' New York State law claims pursuant to 28 U.S.C. § 1367.

5.      This Court has personal jurisdiction over Defendants because each of them is domiciled within the State of New York.

6.      Venue is proper in the Eastern District of New York because the acts and/or omissions giving rise to the claims herein allegedly took place in Brooklyn, New York.

## PARTIES

7.      Defendant Harry Silver Housing Company, Inc. is a New York corporation with its principal place of business in Brooklyn, New York. Defendant HSHC is a 288-unit affordable cooperative at the intersection of Prospect Lefferts Gardens, Crown Heights, and East Flatbush, Brooklyn, New York (the "HSH Site").

8.      Defendant Marion Scott Real Estate, Inc. ("MSI") is a New York corporation with its principal place of business in New York. MSI has contracted with HSHC to handle many of the on-site operations of HSHC, including construction and maintenance projects.

9.      Defendant Plighted Construction and Development Services, LLC is a New York corporation with its principal place of business in New York.

10.     Defendant Alex Freedman is an individual domiciled in New York. Defendant Freedman is Vice President of MSI. During the relevant period, Defendant Freedman maintained an office at the HSH Site and was responsible for overseeing the management of the HSH Site.

11.     Defendant Victor Garvin is an individual domiciled in New York. During the relevant period, Defendant Garvin was Site Manager for MSI at the HSH Site. Defendant Garvin was also an owner of Plighted.

12.     Defendants MSI, Plighted, Freedman, and Garvin were each in active control and management of the construction and maintenance operations of HSH, they regulated the employment of the manual laborers at the HSH Site, acted directly and indirectly in the interest of MSI and Plighted in relation to the employees, and thus are joint employers of Plaintiffs and the collective under the Fair Labor Standards Act (the "FLSA Collective").

13.     Plaintiff **Granville Jackson** worked for Defendants as a manual laborer at the HSH Site.

14.     Plaintiff **Gregory McClain** worked for the Employer Defendants as a manual laborer at the HSH Site.

15.     Plaintiff **Rogelio Enrique Oates, Jr.** worked for the Employer Defendants as a manual laborer at the HSH Site.

16.     Plaintiff **Louis Evans** worked for the Employer Defendants as a manual laborer at the HSH Site.

17.     Plaintiff **Peter Adolphus Facey** worked for the Employer Defendants as a manual laborer at the HSH Site.

## FACTUAL ALLEGATIONS

18.     Defendant HSHC is a corporation operating the 288-unit affordable housing cooperative in Brooklyn, New York. Defendant HSHC requires manual laborers to conduct repairs and renovations of the hundreds of apartment units at the HSH Site.

19.     Defendant MSI is a real estate management company engaged by Defendant HSHC to perform numerous services including maintenance, construction, and renovation work at the HSH Site.

20.     Defendant MSI's website page suggests that Defendant MSI was contracted by MSI to help Defendant HSHC rehabilitate itself after years of financial mismanagement. *See* https://www.marionscott.com/harry-silver (last visited  December 2, 2022) ("MSI was hired and helped transition the community back under HCR supervision..").

21.     Defendant Freedman is Vice President of Defendant MSI.

22.     At all relevant times until mid-February 2020, Defendant Garvin was the MSI Site Supervisor for the HSH Site.

23.     At all relevant times until mid-February 2020, Defendants Freedman and Garvin and a receptionist shared MSI's management office suite at the HSH Site.

24.     In mid-February 2020, Defendant MSI replaced Defendant Garvin with a new manager named Cedric.

25.     In 2018, MSI Site Supervisor Defendant Garvin formed Defendant Plighted and provided manual laborers for HSHC and MSI to perform maintenance, construction, and renovation work at the HSH Site.

26.     Defendant Plighted's separation from Defendant MSI was a charade carried on for years. Plighted was merely an extension of Defendant MSI under which MSI conducted its illegal wage payment practices.

27.     Plaintiffs were each hired by MSI Site Supervisor Defendant Garvin as manual laborers to perform construction and restoration work at the HSH Site.

28.     Manual laborers working at the HSH Site prior to December 2019, including Plaintiffs Granville and Facey, received their pay from MSI Site Supervisor Defendant Garvin.

29.     As a condition of their employment, MSI Site Supervisor Defendant Garvin required Plaintiffs to use their own work tools in the performance of their duties.

30.     The only wages paid to any of the Plaintiffs for their work at the SHS Site from December 2019 to February 2020 were paid by the Head of Security for the HSH Site. Upon information and belief, this person is directly or indirectly employed by Defendant MSI.

31.     Plaintiffs and other similarly situated manual laborers were responsible for construction, building repairs, and restoration of apartments at the HSH Site, including painting, spackling, installing flooring, and installing and repairing molding.

32.     Plaintiffs and other similarly situated manual laborers are not exempt from the overtime requirements of either the FLSA or the New York Labor Law.

33.     The Employer Defendants were joint employers of Plaintiffs and members of the proposed Collective under the FLSA and the New York Labor Law.

34.     The Employer Defendants have acted directly and indirectly in the interest of Defendants MSI, Plighted, and HSHC in relation to Plaintiffs and other prospective members of the Collective.

35.     At all relevant times, Plaintiffs and other manual laborers were supervised by MSI management including Defendants Freedman and Garvin.

36.     Plaintiffs were required to sign in each day at the MSI reception desk outside Defendant Freedman's office at the HSH Site.

37.     Plaintiffs lodged complaints about their unpaid wages, including minimum wage to Defendants Freedman and Garvin.

38.     Plaintiffs continued to perform their duties directly for Defendants Freedman and MSI at the HSH Site after Defendant Garvin was replaced.

39.     In mid-February (after Defendant Garvin was replaced by Cedric), Defendant MSI held a meeting in MSI's conference room between Defendant Freedman, Cedric, and Plaintiffs. Plaintiffs complained to Defendant MSI about their unpaid wages, including unpaid minimum wage and overtime.

40.     On or about February 28, 2020, Defendants MSI and Freedman terminated Plaintiffs' employment.

41.     Upon their termination, Defendants MSI and Freedman required Plaintiffs to immediately leave the apartment in which they were working. Plaintiffs were not permitted to retrieve their work tools which were located in that apartment.

42.     Defendants Freedman and MSI retaliated against Plaintiffs for complaining about their unpaid wages by terminating their employment and withholding their work tools.

43.     Despite repeated requests from Plaintiffs to Defendant Freedman and other MSI personnel, Defendants Freedman and MSI wrongfully withheld Plaintiffs' work tools.

44.     After an inordinate delay, Plaintiffs Oates, Evans, and Facey have been able to obtain their tools.

45.     Defendants Freedman and MSI continue to wrongfully withhold Plaintiffs McClain and Jackson's work tools. Defendants McClain and Jackson's work tools are substantially more valuable than those of the other Plaintiffs.

46.     The Employer Defendants failed to pay all wages due to Plaintiffs including minimum wage, regular hourly wages, and overtime wages when working more than forty hours in a workweek.

47.     The Employer Defendants failed to issue accurate payroll statements to Plaintiffs and other similarly situated manual laborers as required by the Wage Theft Prevention Act.

48.     The Employer Defendants failed to issue notifications of pay rate to Plaintiffs and other similarly situated manual laborers at the time of the commencement of their employment as required by the Wage Theft Prevention Act.

## PLAINTIFFS' EXPERIENCE

### Plaintiff Granville Jackson

49.     Plaintiff Jackson worked as a manual laborer at the HSH Site from January 2019 until February 28, 2020.

50.     Plaintiff Jackson was hired by MSI Site Supervisor, Defendant Victor Garvin.

51.     MSI Site Supervisor, Defendant Victor Garvin required Plaintiff Jackson to supply his own work tools for the performance of his duties.

52.     Plaintiff Jackson worked for the Employer Defendants for approximately forty (40) hours per week for $750 per week for almost a year.

53.     In December 2019, Plaintiff Jackson was furnished with two checks from MSI Site Supervisor Defendant Garvin. Both checks bounced. The Employer Defendants then stopped paying Plaintiff Jackson at all but required him to continue working until February 28, 2020.

54.     In February 2020, the Head of Security for the HSH Site paid Plaintiff Jackson $800 in cash for his work on the HSH Site. Upon information and belief, this person was directly or indirectly employed by Defendant MSI.

55.     The $800 payment from the Head of Security for the HSH Site was the only pay Plaintiff Jackson received for more than twelve weeks of full-time work.

56.     In mid-February 2020, Plaintiff Jackson attended a meeting with Defendant Freedman in MSI's conference room at the HSH Site. At the meeting, Plaintiff Jackson complained to Defendant Freedman about his unpaid wages.

57.     Defendants MSI and Freedman terminated Plaintiff Jackson's employment on February 28, 2020, after he complained to Defendants MSI and Freedman about his unpaid wages two weeks earlier.

58.     Immediately after his termination, Plaintiff Jackson was required to leave the HSH Site even though his work tools were still in the apartment in which he was working.

59.     These tools are worth no less than four thousand dollars.

60.     Plaintiff Jackson made several efforts to obtain his work tools from Defendants MSI and HSHC. He was repeatedly rebuffed by staff at the HSH Site, including Defendant Alex Freedman. To this day, Defendant MSI has not returned Plaintiff Jackson's tools.

61.     After his termination by Defendants MSI and Freedman, Plaintiff Jackson was unable to obtain gainful employment for a substantial period of time.

62.     On September 6, 2022, Plaintiff Jackson through his attorney sent a certified letter to Defendant HSHC seeking, amount other things, the immediate return of his work tools.

63.     The Employer Defendants failed to issue accurate payroll statements to Plaintiff Jackson as required by the Wage Theft Prevention Act.

64.     The Employer Defendants failed to issue a notification of pay rate to Plaintiff Jackson at the commencement of his employment as required by the Wage Theft Prevention Act.

**Plaintiff Gregory McClain**

65.     Plaintiff McClain worked as a manual laborer at the HSH Site from the beginning of January 2020 until February 28, 2020.

66.     Plaintiff McClain was hired by MSI Site Supervisor, Defendant Victor Garvin.

67.     MSI Site Supervisor, Defendant Victor Garvin required Plaintiff McClain to supply his own work tools for the performance of his duties.

68.     Plaintiff McClain was hired to work for $900 per week for a forty (40) hour workweek.

69.     Plaintiff McClain worked approximately fifty-five (55) hours per week.

70.     In February 2020, Plaintiff McClain was paid $200 cash for his work at the HSH Site. The cash was handed to him by the Head of Security for the HSH Site. Upon information and belief, this person was employed directly or indirectly by Defendant MSI.

71.     The $200 payment from the Head of Security at the HSH Site was the only pay Plaintiff McClain received for more than eight weeks of work.

72.     In mid-February 2020, Plaintiff McClain attended a meeting with Defendant Freedman in MSI's conference room at the HSH Site. At the meeting, Plaintiff McClain

complained to Defendant Freedman about his unpaid wages, including unpaid minimum wage and overtime.

73.     Defendants MSI and Freedman terminated Plaintiff McClain's employment on February 28, 2020, after Plaintiff McClain complained to Defendant Freedman about his unpaid wages.

74.     Immediately after his termination, Plaintiff McClain was required to leave the HSH Site even though his work tools were still in the apartment in which he was working.

75.     These tools are worth not less than four thousand dollars and included a table saw, a tile saw, 2 circular saws, 2 screw guns, 2 tape measures, 2 manual levels, a laser level, and a tool belt with additional tools.

76.     Plaintiff McClain made several efforts to obtain his work tools from Defendants MSI and HSHC. He was repeatedly rebuffed by staff at the worksite.

77.     To this day, Defendants MSI and Freedman have not returned Plaintiff McClain's tools.

78.     On September 6, 2022, Plaintiff McClain through his attorney sent a certified letter to Defendant HSHC seeking the immediate return of his work tools.

79.     After his termination by Defendants MSI and Freedman, Plaintiff McClain was unable to obtain gainful employment for a substantial period of time.

80.     The Employer Defendants failed to issue accurate payroll statements to Plaintiff McClain as required by the Wage Theft Prevention Act.

81.     The Employer Defendants failed to issue a notification of pay rate to Plaintiff McClain at the commencement of his employment as required by the Wage Theft Prevention Act.

**Plaintiff Rogelio Enrique Oates, Jr.**

82.     Plaintiff Oates worked as a manual laborer at the HSH Site from the beginning of February 2020 until February 28, 2020.

83.     Plaintiff Oates was hired by MSI Site Supervisor, Defendant Victor Garvin.

84.     MSI Site Supervisor, Defendant Victor Garvin required Plaintiff Oates to supply his own work tools for the performance of his duties.

85.     Plaintiff Oates was hired to work for a rate of $800 per week.

86.     Plaintiff Oates worked approximately forty (40) hours per week.

87.     The Employer Defendants paid Plaintiff Oates nothing for approximately four weeks of work.

88.     In mid-February 2020, Plaintiff Oates attended a meeting with Defendant Freedman in MSI's conference room at the HSH Site. At the meeting, Plaintiff Oates complained to Defendant Freedman about his unpaid wages.

89.     Defendants MSI and Freedman terminated Plaintiff Oates' employment on February 28, 2020, after Plaintiff Oates complained to Defendant Freedman about his unpaid wages.

90.     Immediately after his termination, Plaintiff Oates was required to leave the apartment on the HSH Site that he and other Plaintiffs were working on even though his work tools were still in the apartment in which he was working.

91.     Plaintiff Oates made several efforts to obtain his work tools from Defendants MSI and HSHC. After approximately three months and numerous demands, Defendants finally returned Plaintiff Oates' tools.

92.     After his termination by Defendants MSI and Freedman, Plaintiff Oates was unable to obtain gainful employment for a substantial period of time.

93.     None of the Defendants issued any payroll statements to Plaintiff Oates.

94.     None of the Defendants issued a notification of pay rate to Plaintiff Oates at the commencement of his employment as required by the Wage Theft Prevention Act.

**Plaintiff Louis Evans**

95.     Plaintiff Evans worked as a manual laborer at the HSH Site from approximately the beginning of February 2020 until February 28, 2020.

96.     Plaintiff Evans was hired by MSI Site Supervisor, Defendant Victor Garvin.

97.     MSI Site Supervisor, Defendant Victor Garvin required Plaintiff Evans to supply his own work tools for the performance of his duties.

98.     Plaintiff Evans was hired to work for a rate of $800 per week.

99.     Plaintiff Evans worked approximately forty (40) hours per week.

100.    Defendants paid Plaintiff Evans nothing for approximately four weeks of work.

101.    In mid-February 2020, Plaintiff Evans attended a meeting with Defendant Freedman in MSI's conference room at the HSH Site. At the meeting, Plaintiff Evans complained to Defendant Freedman about his unpaid wages.

102.    Defendants MSI and Freedman terminated Plaintiff Evans' employment on February 28, 2020, after Plaintiff Evans complained to Defendant Freedman about his unpaid wages two weeks earlier.

103.    Immediately after his termination, Plaintiff Evans was required to leave the HSH Site even though his work tools were still in the apartment in which he was working.

104.    Plaintiff Evans made several efforts to obtain his work tools from Defendants MSI and HSHC. He was repeatedly rebuffed by staff at the worksite for approximately one month before his work tools were returned to him.

105.    After his termination by Defendants MSI and Freedman, Plaintiff Evans was unable to obtain gainful employment for a substantial period of time.

106.    None of the Defendants issue any payroll statements to Plaintiff Evans.

107.    None of the Defendants issued a notification of pay rate to Plaintiff Evans at the commencement of his employment as required by the Wage Theft Prevention Act.

**Plaintiff Peter Adolphus Facey**

108.    Plaintiff Facey worked as a manual laborer at the HSH Site in 2019 and later returned in February 2020. Upon his return, he worked for the entire month of February.

109.    On both occasions, Plaintiff Facey was hired by MSI Site Supervisor, Defendant Victor Garvin.

110.     MSI Site Supervisor, Defendant Victor Garvin required Plaintiff Facey to supply his own work tools for the performance of his duties.

111.     In 2019, Plaintiff Facey was hired to work at a rate of $700 for a forty-hour hour workweek.

112.     In 2020, Plaintiff Facey was hired to work for a rate of $800 per week for a forty-hour workweek.

113.     Plaintiff Facey worked approximately forty (40) hours per week.

114.     Defendants paid Plaintiff Facey nothing for approximately four weeks of work in 2020.

115.     In mid-February 2020, Plaintiff Facey attended a meeting with Defendant Freedman in MSI's conference room at the HSH Site. At the meeting, Plaintiff Facey complained to Defendant Freedman about his unpaid wages.

116.     Defendants MSI and Freedman terminated Plaintiff Facey's employment on February 28, 2020, after Plaintiff Facey complained to Defendant Freedman about his unpaid wages two weeks earlier.

117.     Immediately after his termination, Plaintiff Facey was required to leave the HSH Site even though his work tools were still in the apartment in which he was working.

118.     Plaintiff Facey made several efforts to obtain his work tools from MSI and HSHC. He was repeatedly rebuffed by staff at the worksite for approximately one month before his work tools were returned to him.

119.     After his termination by Defendants MSI and Freedman, Plaintiff Facey was unable to obtain gainful employment for a substantial period of time.

120.     Defendants MSI and Freedman terminated Plaintiff Facey's employment on February 28, 2020, after Plaintiff Facey complained to Defendant Freedman about his unpaid wages.

121.     The Employer Defendants failed to issue accurate payroll statements to Plaintiff Facey as required by the Wage Theft Prevention Act.

122.    None of the Defendants issued a notification of pay rate to Plaintiff Facey at the commencement of his employment as required by the Wage Theft Prevention Act.

## COLLECTIVE ACTION ALLEGATIONS

123.    Plaintiffs bring this case as an "opt-in" collective action on behalf of similarly situated manual laborers of the Employer Defendants pursuant to 29 U.S.C. § 216(b) ("the Collective").

124.    Plaintiffs, on behalf of themselves and the prospective collective, seek relief on a collective basis challenging the Employer Defendants' failure to pay them minimum wage for all hours worked and overtime premium pay at their regular hourly rate for hours worked in excess of forty hours.

125.    The Collective is defined as follows:

*All non-exempt manual laborers who worked for the Employer Defendants within three years from the commencement of this action and elect to opt-in to this action.*

126.    Plaintiffs are similar to other members of the Collective because 1) members of the Collective were paid less than minimum wage for all hours worked; 2) some members of the collective worked overtime hours without premium compensation at their regular hourly rate.

127.    Plaintiffs' experiences are typical of the experiences of the other prospective members of the Collective. The Employer Defendants' failure to pay minimum wage and overtime wages at the rates required by the FLSA result from generally applicable policies or practices and does not depend on the personal circumstances of any of the Plaintiffs.

128.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

### AS AND FOR A FIRST CLAIM FOR RELIEF

### (Minimum Wage Violations: FLSA)

129.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

130.     Plaintiffs bring this claim on behalf of themselves and the proposed Collective against Defendants MSI, Plighted, Garvin and Freedman.

131.     The Employer Defendants have engaged in a widespread pattern, policy, and practice of violating the minimum wage requirements of the FLSA.

132.     At all relevant times, the Employer Defendants were subject to the minimum wage requirements set forth in the FLSA, 29 U.S.C. § 201 *et seq.*

133.     At all relevant times, Plaintiffs and the members of the Collective were employees of the Employer Defendants within the meaning of 29 U.S.C. § 203(e).

134.     At all relevant times, the Employer Defendants employed Plaintiffs and the Collective within the meaning of 29 U.S.C. § 203(g).

135.     At all relevant times, the Employer Defendants were engaged in commerce and/or the production or sale of goods for commerce within the meaning of 29 U.S.C. §§ 203(e), (m), and 206(a).

136.     At all relevant times, the MSI and Plighted enterprise had gross operating revenues in excess of $500,000.00 and satisfy the threshold test for the "enterprise" requirement under the FLSA.

137.     As the Employer Defendants shared control of the services of the Plaintiffs and members of the Collective, the Employer Defendants are "employers" as defined by the Fair Labor Standards Act.

138.     Subject to the statutory time limits, the Employer Defendants were required to pay Plaintiffs and the Collective a rate of $15.00 per hour.

139.     The Employer Defendants have engaged in a policy and/or practice of failing to pay Plaintiffs and the members of the Collective the applicable minimum wage for the hours Plaintiffs and the members of the Collective were required to work.

140.     Plaintiffs' work tools constituted "tools of the trade" under the FLSA. Plaintiffs and the Collective are entitled to the rental value of their work tools during the

period of their employment to the extent they were paid less than the applicable minimum wage.

141.    The Employer Defendants have violated and continue to violate 29 U.S.C. § 206(a) by failing to compensate Plaintiffs and the members of the Collective the applicable minimum hourly wage.

142.    As a result of the Employer Defendants' violations of the law and failure to pay Plaintiffs and the members of the Collective the required minimum wage, Plaintiffs and the members of the Collective have been damaged and are entitled to recover from these Defendants all wages due, along with all reasonable attorney fees, interest, and costs, pursuant to 29 U.S.C. § 216.

143.    The Employer Defendants willfully, knowingly, and intentionally have failed, and continue to fail to compensate Plaintiffs and the members of the Collective the required minimum wage.

144.    The Employer Defendants have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and members of the Collective.

145.    Due to the Employer Defendants' intentional and willful failure to pay Plaintiffs and the members of the Collective the applicable minimum wage, Plaintiffs and the members of the Collective are entitled to additional liquidated damages equal to one hundred percent of the total amount of wages due, pursuant to 29 U.S.C. § 216(b).

146.    Members of the Collective are entitled to collectively participate in this action by choosing to "opt-in" and submitting written consent to join forms. 29 U.S.C. § 216(b).

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (Overtime Violations: FLSA)

147.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

148.    Plaintiff McClain brings this claim for relief against Defendants MSI, Plighted, Garvin, and Freedman on behalf of himself and all similarly situated employees who opt-in to the action.

149.    At all relevant times, the Employer Defendants have been, and continue to be, "employers" engaged in the interstate "commerce" and/or in the production of "goods" for "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.

150.    At all relevant times, the Employer Defendants have employed, and/or continue to employ, "employee[s]," including Plaintiffs and all similarly situated employees.

151.    At all relevant times, the MSI and Plighted enterprise had gross operating revenues in excess of $500,000.00 and satisfy the threshold test for the "enterprise" requirement under the FLSA.

152.    The Employer Defendants employ or employed numerous manual laborers who are not Plaintiffs in this case.

153.    The FLSA requires each covered employer, such as the Employer Defendants, to compensate all non-exempt employees for services performed and to compensate them at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a work week.

154.    The Employer Defendants failed to pay Plaintiff McClain and other members of the prospective Collective the required overtime premium for all hours worked in excess of forty in a workweek.

155.    The Employer Defendants' violations of the FLSA were willful and designed to deprive Plaintiff McClain and members of the Collective of appropriate overtime payments.

156.    As a result of the Employer Defendants' violations of the FLSA, Plaintiff McClain and other similarly situated manual laborers have been injured and are entitled to damages for unpaid overtime, liquidated damages, and attorneys' fees costs, disbursements, and interest thereon.

## AS AND FOR THE THIRD CLAIM FOR RELIEF

*(Retaliation Under the FLSA)*

157.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

158.    This claim is brought by Plaintiffs against Defendants MSI and Freedman.

159.    Plaintiffs lodged oral complaints to their joint employers, Defendants MSI and Freedman, in mid-February 2020, concerning their unpaid wages, including minimum wage and overtime.

160.    Defendants MSI and Freedman responded to Plaintiffs' demand for payment of their wages by terminating Plaintiffs' employment on February 28, 2020.

161.    Defendants MSI and Freedman's termination of Plaintiffs for lodging their complaints about unpaid wages constitutes discrimination in violation of Section 215(a)(3) of the FLSA.

162.    Defendants MSI and Freedman's withholding of Plaintiffs' work tools for lodging their unpaid wage complaints constitutes discrimination in violation of Section 215(a)(3) of the FLSA.

163.    Due to Defendants MSI and Freedman's retaliatory conduct, Plaintiffs are entitled to payment of lost and withheld compensation, back-pay, emotional distress damages, and additional amounts such as liquidated damages, interest, and reasonable attorneys' fees.

## AS AND FOR A FOURTH CLAIM FOR RELIEF

### (Minimum Wage Violations: New York Labor Law)

164.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

165.    Plaintiffs bring this claim for relief against all Defendants.

166.    At all times relevant to this action, Defendants MSI, Plighted, Freedman, and Garvin were Plaintiffs' employers within the meaning of New York Labor Law §§ 2 and 651.

167.    At all times relevant, Plaintiffs were Defendants MSI, Plighted, Freedman, and Garvin's employees within the meaning of New York Labor Law §§ 2 and 651.

168.    Defendants MSI, Plighted, Freedman, and Garvin willfully failed to Plaintiffs the applicable minimum wage overtime York Labor Law § 652; § 12 NYCRR § 146-1.4.

169.    Plaintiffs' work tools constituted "tools of the trade" under the FLSA. Plaintiffs are entitled to the rental value of their work tools during the period of their employment to the extent they were paid less than the applicable minimum wage.

170.    Defendant HSHC is liable to Plaintiffs pursuant to New York Labor Law § 198-e (Construction Industry Wage Theft). Defendant HSHC contracted with Defendant MSI to provide services including construction services at the HSH Site and thus is liable for unpaid wage claims brought against Defendant MSI and its subcontractors, including Defendant Plighted.

171.    Plaintiffs are entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid minimum wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law § 663(1), § 198.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (Overtime Violations: New York Labor Law)

172.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

173.    Plaintiff McClain brings this claim for relief against Defendants.

174.    At all times relevant to this action, Defendants MSI, Plighted, Freedman, and Garvin were Plaintiffs' employers within the meaning of New York Labor Law §§ 2 and 651.

175.    At all times relevant Plaintiffs were these Defendants' employees within the meaning of New York Labor Law §§ 2 and 651.

176.    Defendants MSI, Plighted, Freedman, and Garvin willfully required, suffered, or permitted Plaintiff McClain to work overtime and willfully failed to pay him overtime compensation of one and one-half times the regular rate of pay for each hour in excess of forty hours in a workweek as required under New York Labor Law § 650; § 12 NYCRR § 146-1.4.

177.    Defendant HSHC is liable to Plaintiff McClain pursuant to New York Labor Law § 198-e (Construction Industry Wage Theft). Defendant HSHC contracted with Defendant MSI to provide services including construction services at the HSH Site and is thus liable for unpaid wage claims brought against Defendant MSI and its subcontractors, including Defendant Plighted.

178.    As a result of Defendants' New York Labor Law violations, Plaintiff McClain is entitled to recover from Defendants, jointly and severally, amounts proven at trial for unpaid overtime wages, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law §§ 198, 663(1).

## AS AND FOR A SIXTH CLAIM FOR RELIEF

### (Unpaid Wages: New York Labor Law)

179.    Plaintiffs repeat and reallege the previous allegations as if fully set forth herein.

180.    Plaintiffs bring this claim for relief against Defendants.

181.    Defendants MSI, Plighted, Freedman, and Garvin failed to make timely payment of wages and unlawfully deducted all or almost all of their wages from their pay.

182.    Defendants MSI, Plighted, Freedman, and Garvin failed to pay Plaintiffs' wages owed to them in violation of New York Labor Law § 191 (timely payment), § 193 (unlawful deductions)("There is no exception to liability under this section for the unauthorized failure to pay wages ..."), and § 663(1).

183.    Defendant HSHC is liable to Plaintiffs pursuant to New York Labor Law § 198-e (Construction Industry Wage Theft). Defendant HSHC contracted with Defendant MSI to provide services including construction services at the HSH Site and is thus liable for unpaid wage claims brought against Defendant MSI and its subcontractors, including Defendant Plighted.

184.    As a result of Defendants' labor law violations, Plaintiffs are entitled to recover from Defendants, jointly and severally, the full amount of unpaid wages owed to

them based on their regular hourly rates, liquidated damages, reasonable attorney's fees, and the costs and disbursements of the action, pursuant to New York Labor Law §§ 198, 663.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF

### (Wage Theft Prevention Act Wage Payment Statements)

185.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

186.     Plaintiffs bring this claim against Defendants MSI, Plighted, Freedman, and Garvin.

187.     At all relevant times, the Employer Defendants were responsible for providing Plaintiffs with the proper statements with every payment of wages, as required by NYLL § 195.

188.     At all relevant times, the Employer Defendants failed to provide Plaintiffs with the proper statements as required by NYLL § 195.

189.     As a result of the Employer Defendants' failure to issue wage statements, Plaintiffs suffered concrete harm in the form of nonpayment and underpayment of wages, including minimum wage and overtime. Moreover, Defendants MSI, Plighted, Freedman, and Garvin's failure to identify Plaintiffs' nominal employer created difficulty and confusion, deterring Plaintiffs from vindicating their rights.

190.     As the Employer Defendants failed to provide Plaintiffs with proper statements with every payment of wages as required by NYLL § 195, Plaintiffs are each entitled to liquidated damages in the amount of $250.00 per day for every day until Plaintiffs have been paid in full, up to a maximum of $5,000.00, along with all reasonable attorney fees and costs.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF

### (Wage Theft Prevention Act Notices of Pay Rate)

191.     Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

192.    Plaintiffs bring this claim against Defendants MSI, Plighted, Freedman, and Garvin.

193.    The Employer Defendants were responsible for providing Plaintiffs with notifications of pay rate within ten (10) business days of the commencement of their employment pursuant to NYLL § 195(1) and the Wage Theft Prevention Act.

194.    The Employer Defendants failed to provide Plaintiffs with notifications of pay rate at the commencement of their employment pursuant to NYLL § 195(1) and the Wage Theft Prevention Act.

195.    As a result of the Employer Defendants' failure to issue notifications of pay rate, Plaintiffs suffered concrete harm in the form of nonpayment and underpayment of wages, including minimum wage and overtime as well as their right to an hourly wage and overtime when working more than forty hours in a workweek. Moreover, Defendants MSI, Plighted, Freedman, and Garvin's failure to identify Plaintiffs' nominal employer in the notices created difficulty and confusion, deterring Plaintiffs from vindicating their rights.

196.    As the Employer Defendants failed to provide Plaintiffs with Wage Theft Prevention Act notifications as required by NYLL § 195(1), Plaintiffs are each entitled to liquidated damages in the amount of $5,000, along with all reasonable attorney fees and costs.

## AS AND FOR A NINTH CLAIM FOR RELIEF
### (Retaliation Under the NYLL)

197.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

198.    Plaintiffs bring this claim against Defendants MSI and Freedman.

199.    Plaintiffs lodged oral complaints to their Defendants MSI and Freedman in mid-February 2020 concerning their unpaid wage, including minimum wage and overtime. Defendants MSI and Freedman responded by terminating Plaintiffs' employment on February 28, 2020.

200.   Defendants MSI and Freedman's termination of Plaintiffs for lodging their unpaid wage complaints constitutes discrimination in violation of Section 215 of the NYLL.

201.   Defendants MSI and Freedman's withholding of Plaintiffs' work tools for lodging their unpaid wage complaints constitutes discrimination in violation of Section 215 of the NYLL.

202.   Due to Defendants MSI and Freedman's retaliation, Plaintiffs are entitled to payment of lost and withheld compensation, back-pay, emotional distress damages, and additional amounts such as liquidated damages, interest, and reasonable attorneys' fees.

### AS AND FOR A TENTH CLAIM FOR RELIEF

### (Conversion)

203.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

204.   This claim is brought by Plaintiffs against Defendants MSI and Freedman.

205.   Beginning on February 28, 2020, Defendants MSI and Freedman, intentionally retained Plaintiffs' work tools without their consent.

206.   Defendants rebuffed numerous efforts of Plaintiff to obtain their tools, to the exclusion of Plaintiffs' ownership rights.

207.   Defendants continue to possess the work tools of Plaintiffs Jackson and McClain and deprived the other Defendants of their work tools for extended periods of time.

208.   Defendants MSI and Freedman proximately caused damage to Plaintiffs because they were deprived of the use of those tools for their personal and professional use and Defendants' conduct limited Plaintiff's' job prospects.

### AS AND FOR AN ELEVENTH CLAIM FOR RELIEF

### (Trespass to Chattel)

209.   Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

210.    This claim is brought by Plaintiffs against Defendants MSI and Freedman.

211.    Beginning on February 28, 2020, and continuing thereafter, Defendants MSI and Freedman, intentionally and without justification or consent, physically interfered with Plaintiffs' use and enjoyment of their work tools.

212.    Defendants MSI and Freedman proximately caused damage to Plaintiffs because they were deprived of the use of those tools for their personal and professional use and Defendants MSI and Freedman's conduct limited Plantiffs' job prospects.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF
### (Unjust Enrichment)

213.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

214.    This claim is brought by Plaintiffs against Defendants MSI and HSHC.

215.    Defendants MSI and HSHC received benefits at the expense of Plaintiffs, including the benefits of Plaintiffs' labor resulting in the restoration and repair of apartments at the HSH Site.

216.    Defendants MSI and HSHC continue to retain the benefits of Plaintiffs' labor at the expense of Plaintiffs.

217.    Under the circumstances, it would unjust for Defendants MSI and HSHC to retain the benefit without commensurate compensation.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF
### (Quantum Meruit)

218.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

219.    This claim is brought by Plaintiffs against Defendants MSI and HSHC.

220.    Plaintiffs rendered valuable services to Defendants MSI and HSHC in the form of their construction and building restoration labor at the HSH Site.

221.    Plaintiffs' services were accepted, used, and enjoyed by Defendants MSI and HSHC.

222.    Defendants HSHC and MSI were aware that, in performing these services, Plaintiffs expected to be paid by Defendants.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, demand as follows:

A.    A ruling certifying the Collective;

B.    An award to Plaintiffs for unpaid minimum wage and overtime wages under the FLSA and an additional amount equal as liquidated damages;

C.    An award to Plaintiffs on their minimum wage, overtime, and unpaid wages claims and an additional amount equal as liquidated damages;

D.    An award to Plaintiffs for statutory damages for Defendants' violations of the Wage Theft Prevention Act;

E.    An award to Plaintiffs for damages, including but not limited to actual, and liquidated damages against Defendants MSI and Freedman on Plaintiffs' retaliation claims;

F.    An award to Plaintiffs for damages on Plaintiffs' quantum meruit, unjust enrichment, conversion, and trespass to chattel claims;

G.    An award to Plaintiffs for prejudgment and post-judgment interest;

H.    An award to Plaintiffs the cost of this action together with reasonable attorneys' fees; and

I.    Such other and further relief as this Court may deem necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by jury of all triable issues.

Dated: Lynbrook, New York

December 2, 2022

**THE MARLBOROUGH LAW FIRM, P.C**

By:

Christopher Marlborough, Esq. (CM6107)
375 Sunrise Highway, Suite 3
Lynbrook, New York 11563
(212) 991-8960
chris@marlboroughlawfirm.com

*Attorney for Plaintiffs*